IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MAURICE JOHN GATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-3293-CV-S-ODS |
| | ) | |
| CITY OF LEBANON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment (Doc. # 83), which seeks summary judgment on the remaining issues in this case. The motion is granted.

### I. BACKGROUND

#### A. Prologue

Before addressing the facts giving rise to this suit, the Court believes it important to provide a brief procedural history. The case was filed on August 18, 2008. The Amended Complaint[1] asserted five claims:

    Count I        Disability discrimination in violation of Americans with Disabilities Act and Missouri Human Rights Act

    Count II       Violations of the Family Medical Leave Act

    Count III      Retaliatory discharge in violation of the above-mentioned statutes

    Count IV      Denial of the right to counsel

---

[1]The Amended Complaint was deemed filed in an Order dated August 4, 2009. Previously, in an Order dated October 22, 2008, the Court dismissed the individual defendants from Counts I, II, and III, as well as all claims premised on age discrimination. Counts IV and V were not present in the original Complaint.

Count V  Violation of procedural due process rights

On August 4, 2009, the Court dismissed Plaintiff's request for injunctive relief to the extent it sought changes in Defendants' policies for lack of standing and confirmed that the individual defendants were parties to Count V. On August 28, 2009, the Court dismissed Count IV for failure to state a claim.

Defendants filed their Motion for Summary Judgment on March 26, 2010. Plaintiff was granted an extension of time to respond, and his Suggestions in Opposition were filed on May 18, 2010. Defendants filed their Reply Suggestions on June 2, 2010.

Plaintiff's response contains an item-by-item response to Defendants' Statement of Uncontroverted Facts, and admits some facts and controverts others. In controverting Defendants' facts, Plaintiff primarily relies upon his own affidavit. This presents a difficulty because in large measure Plaintiff relies upon his affidavit to controvert statements in his deposition or to controvert the content of documents that are in the Record. Plaintiff cannot create a disputed issue of fact by contradicting his own testimony with his affidavit. E.g., Schiernbeck v. Davis, 143 F.3d 434, 438 (8th Cir. 1998). Plaintiff also cannot create a disputed issue of fact by declaring that a document says something other than what it says.[2]

Plaintiff's response suffers from another fatal flaw. As stated, it responds to Defendants' statement of facts. Unfortunately that is all it does; there is no legal discussion or explanation supporting his claims. This seriously undermines the Court's ability to analyze the case from Plaintiff's perspective.

The Court has considered the Record in the light most favorable to Plaintiff, construing all legitimate and relevant factual disputes in his favor. The Court has then considered the law governing his claims. Having done so, the Court concludes the undisputed facts in the Record demonstrate Defendants are entitled to judgment as a matter of law.

---

[2]The Court is not suggesting Plaintiff cannot dispute the meaning of documents. However, his affidavit declares that certain documents do not contain statements that clearly are contained therein.

## B. Facts Giving Rise to Suit[3]

Plaintiff was employed by the City of Lebanon, Missouri ("the City") as a police officer from May 2002 until October 2007. Defendant Stanley Allen was the Mayor, Defendant Joseph Knapp was the City Administrator, and Defendant Sam Mustard was the Chief of Police. The remaining individual Defendants were members of the City Council.

Plaintiff has a history of anxiety disorder. In early 2007 there were informal discussions among members of the police force about the possibility that wearing bulletproof vests would become mandatory. On February 13, 2007, Plaintiff went to his doctor (Dr. Assama Al-Assafeen) and reported trying to wear a protective vest on one occasion but it caused him to experience serious anxiety-related symptoms. Dr. Al-Assafeen discussed the use of antidepressants, but Plaintiff was "not interested in treatment at that time" but was "concerned about the future" in the event wearing a vest became mandatory.

On June 20, 2007, Chief Mustard distributed a memo declaring "Protective vests will be worn at all times while working in uniform beginning August 1, 2007. Let me know if you have issues that need to be addressed." Plaintiff's attorney apparently began writing Chief Mustard; on July 31, 2007, Chief Mustard called Plaintiff to arrange a meeting to discuss those letters. Plaintiff's attorney was with him when he received the call, and Plaintiff told Chief Mustard that both he and his attorney would be there. An impasse then arose: the Chief (and, allegedly, some or all of the individual Defendants) would not agree to meet if Plaintiff's attorney attended, and Plaintiff would not agree to meet if his attorney did not attend. Plaintiff's Depo. at 63-66.

After the call, Plaintiff became so agitated that a friend (Douglas Duerden) took him to Breech Medical Center. While there, Plaintiff told a nurse that he was homicidal (although he did not specify who it was he thought he might kill). Duerden Depo. at 47-

---

[3]Citation to the Record is not provided for those facts Plaintiff agrees are uncontroverted.

48. He was then taken to Marian Center.[4]  Plaintiff's Depo. at 58-59; Duerden Depo. at 48. The admission record from the Marian Center indicates Plaintiff had homicidal thoughts "toward his Boss and an attorney" and that Plaintiff was afraid he would harm someone or that a colleague would harm him.  Defendants' Exhibit F.  A report from later that day reports that Plaintiff had "homicidal ideations" and was "afraid of snapping and causing harm to co-workers."  Defendants' Exhibit G; see also Defendants' Exhibit H.

On August 2, 2007, the City sent a letter asking Plaintiff to provide (by August 8) documentation of a medical condition that prevented him from wearing a vest.  Plaintiff was discharged from Marian Center on August 3.  On August 7, Plaintiff requested leave under the FMLA.  His request was supported by a statement from Dr. Al-Assafeen indicating Plaintiff was suffering from adjustment disorder, acute anxiety, depression, and possible paranoia and that he was unable to perform strenuous or stressful duties and needed at least three or four weeks off work.  Plaintiff's FMLA request was granted retroactively to July 31, 2007.[5]

On August 22, 2007, Plaintiff told his psychologist that he was stressed, anxious, and could no longer work as a policeman.  On September 10, 2007, Plaintiff saw Dr. Al-Assafeen, who concluded Plaintiff still could not return to work and prepared a note purporting to "extend his family leave for 2 more week[s] from 9/10/07 until 9/24/07." Defendants' Exhibit Q; see also Al-Assafeen Depo. at 24.[6]  Plaintiff never returned to

---

[4]According to Plaintiff, he was given a choice: "I could either [go] voluntarily or [personnel at Breech Medical Center] would have done the paperwork so I said would go."  Plaintiff's Depo. at 58-59.

[5]Plaintiff was originally scheduled to work on August 1, 2007, and notice of proposed disciplinary action was issued.  The notice was withdrawn and no discipline was ever imposed, apparently in light of the retroactive application of FMLA leave.

[6]Dr. Al-Assafeen testified he wanted to see Plaintiff again in two weeks, but Plaintiff denies this fact.  While the Court cannot resolve this factual dispute, there is no dispute that Plaintiff never went back to Dr. Al-Assafeen for a determination of his ability to return to work.  There is also no dispute that Dr. Al-Assafeen never determined Plaintiff could return to work.

4

see Dr. Al-Assafeen, and Dr. Al-Assafeen never prepared a document indicating Plaintiff could return to work (with or without restrictions). On September 17, Plaintiff again told his psychologist that he did not think he could work as a policeman.

On September 27, Plaintiff applied for disability benefits under a program established by the State of Missouri for employees of local governments. In his statement supporting his application, Plaintiff declared that he suffered from anxiety, depression, panic attacks and adjustment disorder, and these conditions were worsened by the requirement that he wear a bulletproof vest. He also explained that the "emotional and mental breakdown" he experienced left him "unable to function causing me to have extreme anger toward authority figures and crippled my ability to have a normal life." He also stated that his condition "has made me unable to function as a police officer and has destroyed my life causing me to have to resign my commission." Defendants' Exhibit S.

Plaintiff's twelve weeks of FMLA leave expired, but he did not supply the City with a statement indicating he was medically fit to return to work. On October 24, 2007, a letter signed by Allen and Knapp was sent to Defendant advising that he was terminated. On October 30, Plaintiff's attorney requested a hearing to appeal the termination. The Police Board met on November 2, and decided not to overturn the decision.[7]

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis,

---

[7]Plaintiff testified that at the November 2 meeting he reported receiving a release from his doctor on September 24 releasing him to work with the limitation that he not be required to wear a bulletproof vest. Plaintiff's Depo. at 115-16. However, no such release was made on September 24 – or ever.

783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### A. ADA/MHRA

Absent direct evidence, the Court must apply the burden-shifting analysis traditionally utilized in employment discrimination cases. "A plaintiff must first establish a prima facie case: a disability within the meaning of the ADA; qualifications to perform the essential functions of the job, with or without reasonable accommodation, and an adverse employment action due to a disability." Wenzel v. Missouri-Am. Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005). If the plaintiff carries this burden, "the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its action. Once the employer meets its burden, the plaintiff must show that the articulated reason is an illegal pretext." Id. Under the MHRA, "a plaintiff must demonstrate that he is disabled and can perform his job with or without reasonable accommodation, that he was discharged because of his disability, and that there is evidence from which a jury could infer that his protected status was a factor in the discharge." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006).

The Record contains abundant evidence that Plaintiff cannot perform his job. Setting aside whether wearing a bulletproof vest is a job requirement, the facts

6

demonstrate Plaintiff was unable to work for medical reasons even if he was not wearing a bulletproof vest.  This is what his doctor said, and this is what he said.  This is why Plaintiff was granted FMLA leave.  This was the basis for his application for disability benefits.  There is no evidence indicating Plaintiff is medically able to perform his prior job.  Plaintiff insists he can perform his job duties if he is accommodated by removing the requirement that he wear a bulletproof vest, but this assertion (even if properly supported) is irrelevant.  The stress and anxiety he experiences when wearing a vest is not what justified his FMLA leave, is not what kept him from working, and is not the medical problem identified by Dr. Al-Assafeen.  The issues surrounding the vest led, directly or indirectly, to a breakdown that prevented Plaintiff from working.  Nothing in the Record suggests that, in the aftermath of that breakdown, Plaintiff has recovered to the point that he can perform his work as a police officer.

Count I might be construed as simply asserting Plaintiff was denied a reasonable accommodation with respect to the vest requirement.  This claim also fails.  Plaintiff never worked after the vest requirement became mandatory – again, not because of that requirement, but because of his severe anxiety attack and his FMLA request.  The City asked for information relevant to a possible accommodation on August 2, but no further efforts to accommodate were necessary in light of Plaintiff's FMLA leave and subsequent failure to demonstrate he was able to work even if he was not wearing a vest.

### B.  FMLA

The Amended Complaint alleges that in September 2007 "Plaintiff was released from medical care and allowed to work with the exception that Plaintiff not wear a protective vest because of his pre-existing medical condition."  Amended Complaint, ¶ 74.  It also alleges the City refused to reinstate Plaintiff.  Amended Complaint, ¶ 75.  The Record conclusively demonstrates these allegations are untrue: Plaintiff was never released from medical care, nor has a doctor certified that he is fit to return to duty as a

7

police officer (with or without a vest). With the sole factual underpinning disproven, Count II fails.

### C. Retaliation

Plaintiff filed a Charge of Discrimination with the EEOC and MHRC on October 22, 2007 – two days before he was terminated. He filed a second charge on November 29, 2007, alleging the termination was retaliation for filing the first charge.

The Amended Complaint advances a different theory of retaliation. Count III does not assert Plaintiff was fired for filing the first charge; instead, it alleges he was fired because he "opposed [Defendants'] pattern and practice of unlawful discrimination, because he requested a reasonable accommodation for his disability and because he used FMLA." Amended Complaint, ¶ 83.

The burden shifting analysis applies to claims of retaliation under the ADA. E.g., Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999). "A prima facie case of retaliation [under the ADA] consists of three elements: (i) protected activity, (ii) adverse action taken by the employer against the employee, and (iii) a causal link between the two." Cossette v. Minnesota Power & Light, 188 F.3d 964, 972 (8th Cir. 1999). Once the prima facie case is established, the defendant must proffer a legitimate nondiscriminatory reason for the adverse action, and the plaintiff must respond with evidence demonstrating the reason is a pretext for discrimination/retaliation. Amir, 184 F.3d at 1025-26. A similar analysis is applied to retaliation claims under the MHRA. E.g., Moisant v. Air Midwest, Inc., 291 F.3d 1028, 1031 (8th Cir. 2002).

Regardless of which theory Plaintiff wishes to pursue, there is no doubt that he engaged in protected activity. He requested an accommodation, requested FMLA leave, and filed an administrative charge. The termination constitutes adverse employment action. The difficulty for Plaintiff is establishing a causal link. As stated earlier, the only apparent link is the temporal proximity between the protected activity and the termination. For the sake of argument, the Court will assume the causal link has been established.

The burden thus shifts to the City, and it asserts it terminated Plaintiff because his FMLA leave expired and he had not presented documentation medically clearing him to return to duty. This is a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and it is supported by the Record. Therefore, the burden returns to Plaintiff to demonstrate the proffered reason is pretextual. Plaintiff has failed to carry this burden. As stated, the only evidence in Plaintiff's favor relates to the timing of events, and the Court of Appeals has held that "timing alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse employment action." Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 916 (8th Cir. 2006); see also EEOC v. Kohler Co., 355 F.3d 766, 774 n.7 (8th Cir. 2003); Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 272 (8th Cir. 1996). Consequently, Plaintiff's retaliation cannot survive.

### D. Procedural Due Process

The Amended Complaint alleges Defendants failed to follow its policies and procedures and failed to provide him with a hearing. Amended Complaint, ¶¶ 103-04.

Plaintiff does not identify the policies and procedures he believes should have been followed. The City has policies relating to disciplinary actions (including terminations), but Plaintiff's termination was not a disciplinary decision so these policies do not apply to him. The State of Missouri provides terminated law enforcement officers the right to request a post-termination meeting (not a hearing), but this meeting occurred. Mo. Rev. Stat. § 85.011.[8] The circumstances of his termination were not sufficient to require a name clearing hearing. See Stodghill v. Wellston School Dist., 512 F.3d 472, 476 (8th Cir. 2008) (describing instances in which Due Process requires a name clearing hearing).

---

[8]Arguably, Plaintiff was not entitled to this meeting because he did not request it within forty-eight hours of his termination. Given that the meeting took place, there is no need to dwell on this issue.

9

In his deposition, Plaintiff complained that his post-termination meeting was with the Police Board and not the personnel board. However, Plaintiff has not identified any legal infirmity. Section 85.011 prescribes that the meeting "be held before any individual or board as designated by the governing body," and in this case the City obviously designated the Police Board.

The Court has done its best to divine the particulars of Plaintiff's due process claim, but ultimately is unable to discern a violation. Therefore, Defendants are entitled to summary judgment on Count V.

### III.  CONCLUSION

For these reasons, the Motion for Summary Judgment is granted, and summary judgment is granted to Defendants on Counts I, II, III, and IV of the Amended Complaint.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: June 11, 2010                     UNITED STATES DISTRICT COURT